UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARL MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07CV1594 CAS |
| ) | (TIA) |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court under 42 U.S.C. §405(g) for judicial review of the denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. The case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. §636(b).

## Procedural History

On July 19, 2005, Plaintiff filed an application for Disability Insurance Benefits, alleging an onset date of May 31, 2004. (Tr. 89-91) Plaintiff's application was denied on October 5, 2005. (Tr. 60-64) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 57) On January 31, 2007, Plaintiff appeared and testified at a hearing before an ALJ. (Tr. 243-258) In a decision dated March 14, 2007, the ALJ issued a decision finding that Plaintiff was not entitled to a period of disability or Disability Insurance Benefits under the Social Security Act. (Tr. 17-23) On July 24, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. 8-10) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified that he was 47 years old and had a high school education. He worked in construction over the past 15 years. Plaintiff stated that he was a laborer and belonged to the Local 110 labor union. He did not operate any machinery. Plaintiff received a disability retirement pension from the union. (Tr. 246-247)

Plaintiff testified that he was 6 feet, 1 inch tall and weighed 350 pounds. His normal weight was 250 pounds. The extra weight caused breathing difficulties. However, Plaintiff stated that he continued to smoke between 2 and 3 packs of cigarettes per day. Although doctors encouraged Plaintiff to quit smoking, he was able to cut down for only a short time. He testified that he started smoking when he was 16 years old. (Tr. 248-249)

In 2003, Plaintiff suffered a work-related injury. He testified that while fixing leak in a river pipe, a bulkhead collapsed on his back and pinned him under water on a high beam. Plaintiff stated that he injured everything from his right foot to his shoulders. He was bruised all over his back and shoulders. Plaintiff filed a Workers' Compensation claim, for which he received a lump sum settlement in 2005. He had not worked since May 31, 2004. (Tr. 249-250)

Plaintiff testified that he had constant pain in his back. He had difficulty bending or squatting, and he experienced spasms. Plaintiff also had problems with his right leg. He stated that his leg went numb and then tingled as though it was on fire. An EMG test was positive. Plaintiff further testified regarding other problems which prevented him from working full time. He had arthritic spurs on his right elbow and wrist and some arthritis in his left wrist. He was unable to bend, straighten, or rotate his right elbow. In addition, Plaintiff could not twist his right wrist or lay it flat. The more Plaintiff

used his right hand, the more problems he experienced. He was unable to shave. Plaintiff could fasten buttons and zippers but had difficulty brushing or washing his hair because his elbow would not completely bend. (Tr. 251-254)

Plaintiff stated that he saw Dr. Bartelome Kairuz every two months. Dr. Kairuz evaluated Plaintiff's ability to sit, stand, and perform other work functions. Plaintiff testified that the evaluation was accurate. (Tr. 253)

Dr. Jeff Magrowsky, a vocational expert (VE), also testified at the hearing. The ALJ posed a hypothetical question incorporating certain restrictions. The ALJ cited a hypothetical 44-year-old claimant with a high school education and the same past work experience as the Plaintiff. He could lift and carry 20 pounds occasionally and 10 pounds frequently. Further, he was able to work with a sit/stand option and could occasionally climb stairs and ramps. However, he could not climb ropes, ladders, or scaffolds. The claimant could occasionally stoop, crouch, kneel, and crawl. Fingering fine manipulation was limited to no repetition. Given these restrictions, the VE testified that the hypothetical claimant could not return to any past relevant work. (Tr. 254-255)

The VE further testified that some work did exist in the national and state economies which the hypothetical claimant could perform. These jobs included a gate or watch guard and furniture rental consultant. With regard to the gate or watch guard position, there were 10,000 such jobs in the State of Missouri and over 900,000 in the national economy. There were about 500 furniture rental consultant positions in Missouri and over 20,000 in the national economy. (Tr. 255)

The ALJ also posed a hypothetical based upon on the Residual Functional Capacity evaluation of Dr. Kairuz. Dr. Kairuz opined that the hypothetical claimant could lift and carry 20 pounds occasionally; sit for two hours during an eight hour work day; stand or walk for less than two hours

3

during an eight hour work day; and perform fingering and fine manipulation with no repetition. Given these restrictions, the VE testified that the claimant could not return to any past relevant work. In addition, the claimant would only be able to perform part-time work. (Tr. 255-256)

Plaintiff's attorney also questioned the VE. The attorney asked whether an employer would tolerate a person requiring rest after walking two blocks, climbing a flight of stairs, or standing in one place for 20 minutes. The VE answered that a person unable to complete an assignment in a timely fashion because he had to rest would cause a problem with his employer. (Tr. 256)

In a Function Report, Plaintiff stated that his daily activities included taking his daughter to work, picking up the house, washing laundry and dishes, mowing the grass on a riding mower, watching TV, picking up his daughter, and cooking supper. He further reported that he could not stand longer than 1 ½ to 2 hours or sit longer than 2 hours. He could not sleep for long stretches of time due to pain. Plaintiff prepared meals daily, which included sandwiches, meals in the microwave, and meat on the grill. He usually spent 35 to 45 minutes making a meal. He sat down periodically while doing the dishes and laundry. His wife also helped him. Plaintiff went outside daily and drove his car. He grocery shopped once a week. The length of time he spent shopping depended on his leg. He did not pay bills or use a checkbook because he had difficulty reading. Plaintiff's hobbies included watching TV, deer hunting with a bow, and fishing. However, Plaintiff stated that he had trouble shooting the bow because he was unable to bend his elbow. He could not walk when hunting, so he sat in trees. His social activities included giving rides to work, talking, playing cards, and watching movies. (Tr. 120-125)

Plaintiff further stated that his conditions affect lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, completing tasks, and using his hands. He explained that his back

hurt when squatting, standing for 2 hours, walking 100 to 200 yards, bending, sitting for 1 hour, kneeling for 5 minutes, and climbing 1 flight of stairs. He could not use his hands because he was unable to bend his right wrist. (Tr. 125) In his Disability Report, Plaintiff reported that he was disabled due to back and leg problems; arthritis in his wrist and elbow; arthritic spurs in his right arm; and left ankle problems. Plaintiff stated that he was unable to walk or stand for any length of time because of pain. His leg swelled all of the time, but it swelled more when Plaintiff was on his feet. He had limited use of his right arm. For example, he reported that he experienced pain when trying to pick up a gallon of milk. (Tr. 99-100)

## **Medical Evidence**

On May 6, 2003, Plaintiff sustained a crush injury to his right foot while at work. (Tr. 211-237) Plaintiff had multiple bruising to his legs, arms, and right abdominal wall. The most severe injury was the crush injury to his right foot. (Tr. 234) However, an x-ray of his right foot revealed no fracture, dislocation, destructive lesion, or arthritis. (Tr. 236) Plaintiff attended physical therapy sessions in June 2003. (Tr. 217-227, 229-230) Dr. Chris Kostman stated that Plaintiff could return to regular work activity on August 14, 2003. (Tr. 211)

On April 20, 2004, Bartolome C. Kairuz, M.D., examined Plaintiff for complaints of a bad cough, sinus drainage, and ear problems. Plaintiff also reported painful elbows and wrists and requested arthritis medication. Dr. Kairuz noted that Plaintiff took Ibuprofen and smoked 2 packs of cigarettes a day. Dr. Kairuz assessed bronchitis and prescribed medication. (Tr. 204)

On August 5, 2004, Dr. Gary J. Schmidt performed an independent medical examination. Plaintiff's chief complaint was right lateral leg numbness since the date of his injury. He reported that his foot was "perfect" and was not giving him any pain, just occasional stiffness and swelling with

5

prolonged standing. Further, Plaintiff stated that the lateral leg pain was mostly a nuisance, but he was concerned that it was getting worse. The numbness was present occasionally; however, it did not limit his daily activities. The examination revealed tenderness on the lateral aspect of Plaintiff's leg but was otherwise normal. Dr. Schmidt assessed traumatic meralgia parasthetica. He opined that Plaintiff had some injury to the lateral cutaneous nerve of the thigh, which was a self-limiting condition. Dr. Schmidt did not believe that treatment or diagnostic tests were necessary. He further opined that Plaintiff's condition was causatively related to his injury. Plaintiff denied any previous conditions or disability. Dr. Schmidt stated that Plaintiff could return to full work duty without restrictions. However, he explained that meralgia parasthetica could become severe enough to require cortisone injections. He noted that Plaintiff's foot healed well. Dr. Schmidt assessed a 4% disability of Plaintiff's right lower extremity. (Tr. 180-182)

Dr. John J. O'Keefe evaluated Plaintiff on September 27, 2004 for complaints of pain and numbness in his right leg over the past 1 ½ years. Plaintiff experienced numbness in the anterior aspect of his right thigh and the medical aspect of this right leg. Plaintiff denied lower extremity weakness or low back pain. Dr. O'Keefe diagnosed right lower extremity pain and numbness, essential tremor, and status post splenectomy. Dr. O'Keefe also rendered a differential diagnosis regarding Plaintiff's lower extremity pain. Dr. O'Keefe opined that the likely diagnosis was right femoral neuropathy with neuropathic pain. The less likely diagnosis was right L4 radiculopathy. He ordered further tests and prescribed phenytoin for neuropathic pain. (Tr. 194-197)

A CT scan of the lumbar spine on September 30, 2004 revealed a broad-based disk protrusion at L4-5 and left minimal disk protrusion at L5-S1. (Tr. 209) An EMG test performed on January 11, 2005 revealed evidence of denervation of the right quadriceps muscle. (Tr. 191)

6

Plaintiff returned to Dr. O'Keefe on January 11, 2005. Plaintiff reported burning pain in the anterior aspect of this right thigh and the medial aspect of his right leg with constant numbness. However, the pain was not accompanied by low back pain or lower extremity weakness. Dr. O'Keefe noted previous tests performed on Plaintiff. Dr. O'Keefe's impressions were right femoral neuropathy, essential tremor, elevated hemoglobin, and venous insufficiency. Dr. O'Keefe increased Plaintiff's dosage of phenyloin, ordered further tests, and recommended that Plaintiff return in four months. (Tr. 186-189)

On January 14, 2005, Dr. Kairuz examined Plaintiff for complaints of pain and numbness in his right leg. Plaintiff indicated that Dr. O'Keefe said that Plaintiff's symptoms resulted from diabetes. Dr. Kairuz assessed peripheral edema and obesity and prescribed medication. (Tr. 203)

Plaintiff phoned Dr. O'Keefe's office on January 20, 2005, complaining of burning pain in his right thigh and leg despite his medication. Dr. O'Keefe increased Plaintiff's dosage for neuropathic pain. (Tr. 185)

On August 16, 2005, John E. Emmons, D.O., evaluated Plaintiff on behalf of Social Security Disability Determinations. Plaintiff reported numbness in his right thigh which improved when sitting; lumbar pain occurring 3 to 4 times a year and lasting from several days to several weeks; arthritis in the wrists and right elbow; swelling in his lower legs every day extending to the knees; numbness in the bottoms of his feet; and mild dyslexia. Plaintiff took Ibuprofen for pain. Neuromuscular examination was positive for dysesthesias and parasthesias of the soles of the feet intermittently and positive for swelling in the right wrist and fingers. Plaintiff exhibited restricted range of motion in the cervical and lumbar region, along with moderate bilateral tenderness beginning in the lower thoracic region around T10 and becoming significantly worse at L1 through L5. Examination of

7

Plaintiff's upper extremities revealed restricted range of motion in the shoulders, elbows, and wrists, along with a tremor in Plaintiff's hands bilaterally. Dr. Emmons also noted dependent edema in the right lower extremity, with restricted range of motion of the right knee and right hip. Straight leg raising was restricted on the right in both the supine and seated position. With regard to Plaintiff's gait, motion of both the upper and lower extremities was restricted. Plaintiff could heel and toe walk with difficulty. He could squat halfway down and arise with difficulty and by using his hands to steady himself. Plaintiff could kneel on either knee with difficulty but needed support from his hands. (Tr. 154-158)

Dr. Emmons diagnosed traumatic meralgia paresthetica by history; essential tremor, more pronounced on the right; venous insufficiency; intervertebral disk herniation, L4-5; minimal left intervertebral disk herniation at L5-S1; tobacco dependence syndrome; arthralgia, bilateral shoulders, elbows, wrists, cervical and lumbar spine; obesity; hypertension; hearing deficits; dependent edema bilaterally; and onychomycosis. Dr. Emmons opined that Plaintiff could walk 1 to 2 blocks, climb one flight of 10 steps, and stand in one place 20 to 30 minutes before needing to rest. Plaintiff could sit for up to 2 hours before needing to change positions. Dr. Emmons further stated that Plaintiff could travel for 2 hours at a time. In addition, Plaintiff could perform fine motor functions for 15 to 20 minutes at a time before needing to rest. Dr. Emmons concluded that Plaintiff was unable to function in his previous job capacity as a construction laborer. (Tr. 158-159)

Plaintiff returned to Dr. Kairuz on March 17, 2006. Dr. Kairuz noted that Plaintiff was applying for disability and needed Dr. Kairuz to complete a form. Plaintiff complained of back and right leg pain. Dr. Kairuz prescribed medication and ordered a CT scan. (Tr. 153) On March 20, 2006, a CT scan of Plaintiff's lumbar spine revealed mild degenerative changes with a slight

8

narrowing of the L4-5 disk space. (Tr. 151)

A May 5, 2006 statement from Dr. Kairuz indicated that Plaintiff had a lot of physical problems and difficulty working. Dr. Kairuz opined that for these reasons, Plaintiff was unable to work. (Tr. 147) That same date, Dr. Kairuz completed a Physical Residual Functional Capacity Questionnaire. Dr. Kairuz diagnosed severe arthritis in Plaintiff's back, elbow, and joints. Dr. Kairuz expected Plaintiff's impairments to last at least 12 months. In addition, depression and anxiety contributed to the severity of Plaintiff's symptoms and functional limitations. Plaintiff had difficulty standing and walking even a short distance. Plaintiff's pain was severe enough to interfere with his attention and concentration frequently. Plaintiff was markedly limited in his ability to deal with work stress. (Tr. 142-143)

With regard to Plaintiff's physical limitations, Dr. Kairuz opined that Plaintiff was unable to walk even one block. Plaintiff could sit continuously for more than 2 hours but could stand only 10 minutes. In an 8-hour work day, Plaintiff could sit and stand/walk less than 2 hours. Further, Plaintiff required a job which permitted shifting positions at will and allowed Plaintiff to take unscheduled breaks. Dr. Kairuz opined that Plaintiff needed a break every 2 hours for 20 minutes. In addition, Plaintiff needed to elevate his leg above knee height for 3 hours during an 8-hour work day. Dr. Kairuz also stated that Plaintiff required a cane or other assistive device when standing/walking. He indicated that Plaintiff could occasionally lift 20 pounds. However, Plaintiff had significant limitations doing repetitive reaching, handling, or fingering. Specifically, Plaintiff was unable to grasp, turn, or twist objects with his right hand. He could perform fine finger manipulations for 2/3 of the day and reach overhead for half of the day with his right arm. With regard to his left arm, he could use his hands to grasp, turn, and twist objects for 3/4 of the day; perform fine finger manipulations for 1/3

9

of the day; and never reach overhead. Plaintiff was able to bend and twist at the waist for 1/3 of a work day. Further, Dr. Kairuz indicated that Plaintiff's impairments were likely to produce good days and bad days. Dr. Kairuz opined that Plaintiff would be absent from work more than 3 times a month. Dr. Kairuz also noted mild psychological limitations, as well as limited vision. Humidity, dust, and fumes bothered Plaintiff. (Tr. 143-145) Dr. Kairuz reiterated his findings in a questionnaire dated January 26, 2007. (Tr. 136-140)

## The ALJ's Determination

In a decision dated March 14, 2007, the ALJ found that Plaintiff had severe medically determinable impairments including degenerative disc disease of the spine with right neuropathy, obesity, and osteoarthritis of the right elbow and wrists. However, these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible. The ALJ determined that Plaintiff's RFC included light exertional level with the need for a sit/stand option with no climbing of ropes, ladders, and scaffolds. Further, Plaintiff could only occasionally climb stairs and ramps, stoop, kneel, and crouch. He could not perform repetitive fingering or fine manipulation. (Tr. 22-23)

The ALJ found that Plaintiff was unable to perform any of his past relevant work. He was a younger individual between the ages of 18 and 44, had a high school education, possessed no transferable skills, and had the RFC to perform a significant range of light work. Using the Medical-Vocational Rules as a framework, a significant number of jobs existed in the national economy which Plaintiff could perform. Examples of these jobs included a gate guard and a furniture rental consultant. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the

10

Social Security Act, at any time through the date of the decision. (Tr. 23)

Specifically, the ALJ assessed Plaintiff's testimony and reports regarding his daily activities. The ALJ then noted that the medical evidence did not support Plaintiff's allegations. The ALJ evaluated the medical reports, including the Questionnaire submitted by Dr. Kairuz. The ALJ found that the medical record contained no credible physician opinion of disability. In particular, Dr. Kairuz's report of limitations was based more on Plaintiff's input than objective clinical findings. Further, the report was inconsistent with the longitudinal record viewed as a whole. The ALJ stated that no medically acceptable diagnostic techniques existed in this case. In addition, the ALJ found Plaintiff's mental condition to be non-severe. The ALJ further noted the medical opinions of medical consultants with the State disability determination service, who concluded that Plaintiff was capable of performing work at the light exertional level. Therefore, the ALJ determined that, based upon the entire record, Plaintiff was able to perform a wide range of work at the light exertional level. (Tr. 18-21)

Further, the ALJ relied upon the VE's testimony to ascertain that Plaintiff had the RFC to perform jobs as a gate guard or furniture rental consultant. The ALJ acknowledged that, based upon Plaintiff's attorney's questions, the VE testified that Plaintiff was unable to work. However, the ALJ noted that these questions assumed facts not in evidence, and the ALJ refused to give weight to the VE's answers. Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 21-22)

## Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and

12

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak, 49 F.3d at 1354.

Pain alone may be disabling within the meaning of the Social Security Act if it is supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to cause pain. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (listing

factors to consider when evaluating subjective complaints of pain).[2]  However, if inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995).

## **Discussion**

The Plaintiff argues that the ALJ's disability determination is erroneous because the ALJ failed to articulate a legally sufficient rationale for the RFC findings.  Further, the Plaintiff asserts that substantial evidence does not support the ALJ's determination because the hypothetical question posed to the VE did not capture the concrete consequences of Plaintiff's impairments.  The Defendant contends that substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

The undersigned finds that substantial evidence does not support the ALJ's determination and that the case should be remanded to the ALJ for further proceedings.  The medical evidence shows that Dr. Kairuz treated Plaintiff several times during the relevant time period.  Dr. Kairuz submitted two Physical Residual Functional Capacity Questionnaires and issued a written statement that Plaintiff was unable to work. (Tr. 136-147)  In the questionnaires, Dr. Kairuz found that plaintiff could stand continuously for only 10 minutes and sit or stand/walk less than 2 hours in an 8-hour work day.  (Tr. 137, 143) Dr. Kairuz indicated that Plaintiff required a job which permitted shifting positions and allowed Plaintiff to take 20 minute breaks every 2 hours.  He also noted a need to keep Plaintiff's leg

---

[2] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimant's functional restrictions. Polaski, 739 F.2d at 1322.

elevated above knee height for 3 hours during an 8-hour work day. (Tr. 138, 144) Further, Dr. Kairuz's response mentioned that Plaintiff would likely be absent from work about 4 times per month. (Tr. 139, 145)

Despite this evidence, the ALJ determined that Plaintiff was able to perform a wide range of light exertional work with the need for a sit/stand option. (Tr. 21) He dismissed Dr. Kairuz's statements as not credible because they were based more on Plaintiff's input than on objective clinical findings. (Tr. 20) The ALJ also found the reports inconsistent with the longitudinal record as a whole. (Tr. 20)

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations by treating physicians and others, and claimant's own descriptions of his limitations." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (citation omitted). "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted). The opinion of a treating physician regarding a plaintiff's impairments will receive controlling weight where "the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Id. (citation omitted). However, a consulting physician's opinion, based upon only one examination of the plaintiff, does not generally represent substantial evidence. Id. (citation omitted).

Here, the opinion of Plaintiff's treating physician, Dr. Kairuz, indicated that Plaintiff was unable to work. Contrary to the ALJ's determination, the record contains objective medical evidence and diagnostic tests supporting Dr. Kairuz' opinion. Dr. Kairuz ordered a CT scan of Plaintiff's spine, and the results showed degenerative changes. (Tr. 151) Dr. Emmons' report is also

15

consistent with Dr. Kairuz's report. Dr. Emmons stated that Plaintiff could only walk 1 to 2 blocks, climb one flight of 10 steps, and stand in one place for about 20 minutes before needing to rest. He further indicated that Plaintiff could only sit for about 2 hours before needing to change positions. (Tr. 158-159) The medical reports of Dr. O'Keefe also demonstrate objective clinical findings. An EMG test indicated denervation in the right quadriceps muscle. In addition, Dr. O'Keefe noted broad-based disk protrusion at L4-5 and left minimal disk protrusion at L5-S1 from a CT scan of Plaintiff's lumbar spine. (Tr. 188, 191)

The ALJ appears to have based his opinion upon the medical opinions of medical consultants with the State disability determination service. The ALJ noted that these consultants concluded that Plaintiff was capable of performing work at the light exertional level. The ALJ considered the consultants' findings to be expert opinions on the issue of Plaintiff's medical capabilities and limitations. (Tr. 21) However, as previously stated, a consulting physician's opinion does not generally represent substantial evidence. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Because the ALJ failed to give substantial weight to the opinions of Plaintiff's treating physicians and instead credited the opinions of medical consultants, substantial evidence does not support the ALJ's RFC finding.

Therefore, the case should be remanded to the ALJ for further development of Plaintiff's Residual Functional Capacity, consistent with this report and recommendation. The ALJ has the duty to fully and fairly develop the record. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). "If the ALJ did not believe . . . that the professional opinions available to him were sufficient to allow him to form an opinion, he should have further developed the record to determine, based on substantial evidence, the degree to which [Plaintiff's] . . . impairments limited his ability to engage in work-

related activities." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (citation omitted). On remand, the ALJ should re-contact Plaintiff's treating physicians for further clarification and/or explanation of Plaintiff's limitations and their relationship to his ability to perform work-related activities.

In addition, the ALJ should include those impairments he finds credible in a restated hypothetical to the VE. "A proper hypothetical question presents to the vocational expert a set of limitations that mirror those of the claimant." Hutton v. Apfel, 175 F.3d 651, 656 (8th Cir. 1999). The record contains VE testimony indicating that, if the ALJ accepted Dr. Kairuz's report, no jobs would exist in the national economy which Plaintiff could perform. Thus, on remand, the ALJ should obtain further VE testimony after properly assessing Plaintiff's RFC.

Finally, the undersigned notes that the ALJ failed to properly discredit Plaintiff's subjective complaints. The ALJ is required to make express credibility determinations setting forth his reasons for discrediting Plaintiff's complaints. Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). The ALJ may disbelieve Plaintiff's subjective complaints based on inconsistencies in the evidence as a whole; however, "he must give reasons for discrediting the claimant." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) (citation omitted). Here, the ALJ merely set forth the daily activities contained in Plaintiff's Disability Report. The ALJ did not inquire about Plaintiff's activities during the hearing, rendering it difficult to discredit Plaintiff's subjective complaints. On remand, the ALJ should further develop Plaintiff's subjective complaints and his daily activities in order to make a proper credibility determination.

Accordingly,

**IT IS HEREBY RECOMMENDED** that this cause be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

          /s/ Terry I. Adelman
    UNITED STATES MAGISTRATE JUDGE

Dated this   4th   day of September, 2008.